IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Travis Allison, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25 C 427 |
| | ) | |
| v. | ) | |
| | ) | |
| City of Chicago, Emily Coates, | ) | Judge John Robert Blakey |
| Greystar LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of an interaction that took place at Plaintiff's apartment door, after Plaintiff refused to provide access to his apartment for repairs. Plaintiff's management company attempted to gain access to his apartment to replace a sprinkler head; he refused, the parties got the police involved, and ultimately the necessary repairs were made. Plaintiff then sued the management company, its representative, and the responding officers, alleging trespass, violation of the Fourth Amendment, violation of "the Illinois Residential Tenant's Right to Organize Act," and intentional infliction of emotional distress. *See* [12]. The Officers and the property management Defendants separately moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), [24], [27]. For the reasons explained below, this Court grants both motions.

I.   **Background**[1]

Plaintiff Travis Allison rents an apartment in a building located at 1401 South State Street in Chicago. [12] ¶¶ 4, 12. Defendant Greystar LLC is the property management company that operates the building; Emily Coates works as a property manager for Greystar. *Id.* ¶¶ 5, 6, 13. Plaintiff alleges that, on December 2, 2024, Defendant Coates "aggressively" banged on his door and demanded entry into his apartment to make repairs. *Id.* ¶ 17. When he refused to open the door, she called the police. *Id.* ¶¶ 21–23. Officers Grabowski and Torres then arrived on the scene and began banging on Plaintiff's door, demanding entry. *Id.* ¶ 25. Plaintiff denied entry to the officers. *Id.* at ¶ 27. Plaintiff requested a supervisor, and a short time later, Sergeant Dolan arrived on the scene. *Id.* at ¶¶ 28–29. Defendant Dolan advised Plaintiff that if he assaulted anyone coming in, he would be arrested. *Id.* at ¶ 32. Plaintiff alleges that under duress he allowed entry to avoid escalation. *Id.* at ¶ 36.

Plaintiff alleges that the officers unlawfully entered his apartment and Coates facilitated that unlawful entry. *Id.* ¶¶ 60–73, 79–90. He sued for trespass, violation of the Fourth Amendment, intentional infliction of emotional distress, and violation of the Illinois Residential Tenant's Right to Organize Act. *See* [12]. Defendants have moved to dismiss all claims, *see* [24], [27].

II.  **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's amended complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic* v. *Twombly*,

---

[1] The Court draws these facts from Plaintiff's Second Amended Complaint [12].

2

550 U.S. 544, 570 (2007). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Plaintiff's favor. *Id*. But this Court does not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Discussion & Analysis

#### A. The Officers' Body Worn Camera Footage

Along with their motion to dismiss, Defendants submitted Officer Grabowski's and Sergeant Dolan's body-worn camera footage covering the entire incident. *See* [25]. The footage directly contradicts many of Plaintiff's allegations and eviscerates Plaintiff's claims. As a result, before turning to the merits of the parties' arguments on dismissal, the Court must discuss the footage, including the propriety of considering it at this stage of the proceedings.

The footage, taken December 2, 2024, the date of the incident described in the complaint, shows the entire incident from Officer Grabowski's perspective and from Sergeant Dolan's perspective. *See* [25]. Officer Grabowski's body worn camera footage shows that she and Officer Torres arrived at Plaintiff's apartment building, a high rise located at 1401 South State Street in Chicago, at approximately 1:06 p.m. A management company employee indicated that Plaintiff had denied access to his

3

apartment in the past and was doing so again; and she showed the officers documentation demonstrating that the company had provided notice, almost a week in advance, of the necessity of sprinkler repairs and the need for access on a particular date—namely, on December 2—to make those necessary repairs. Officer Grabowski attempted to contact Plaintiff via telephone, and, when he failed to answer, the officers proceeded to the 18th floor and to his unit, unit 1813.

Officer Grabowski rang Plaintiff's doorbell at approximately 1:19 p.m.; she then proceeded to knock several times, ring the doorbell several more times, and call him once more on his telephone number. Plaintiff did not respond to any of these attempts to contact him. With officers standing by, building maintenance employees then began to attempt to change the lock on Plaintiff's apartment door so that they could gain access to the apartment to repair the unit's sprinkler. At that point, Plaintiff began to communicate through his closed apartment door and requested a supervisor, as well as Officer Grabowski's badge number, which she provided. Plaintiff also became verbally abusive, calling the management company employee a "stupid bitch" and a "stupid fat bitch" several times. He repeatedly screamed that he did not have to provide access to his apartment and that he had a God-given right to sue her any time he wanted.

At Plaintiff's request, Officer Grabowski called for a supervisor, and Sergeant Dolan arrived on the scene at approximately 1:28 p.m. Sergeant Dolan's body worn camera footage shows him arriving on the scene, with Officers Torres and Grabowski and building maintenance staff already standing in the hallway outside Plaintiff's

4

door. Officer Grabowski explained the situation to Sergeant Dolan, who also spoke with the management staff, while Plaintiff interjected various comments from behind the closed door.

Plaintiff asked Sergeant Dolan for his badge number, which Dolan provided, and then Plaintiff told his side of the story—how he had taken a day off work to allow the company to change certain filters in the apartment and now does not think the repairs they're trying to make would help him. He claimed he was denying access for repairs because he had a pending legal matter with the company; he claimed the company was trying to entrap him. Sergeant Dolan advised Plaintiff that the maintenance staff simply wanted to fix the sprinkler head and that he could observe while staff did so, without the management company representative (the "stupid bitch") ever coming into the apartment. Plaintiff claimed he never received notice, but Sergeant Dolan again confirmed the validity of the notice (and confirmed that Plaintiff had, in fact, not only received it but also responded to the notice); he then advised Plaintiff that maintenance staff was going to drill into the lock to open the door, that the officers would ensure that no harm came to them, and that if Plaintiff attempted to harm them, the officers would arrest him. Before the locksmith could change the lock, Plaintiff relented and opened his apartment door to allow maintenance staff to enter the apartment and replace the sprinkler head.

The footage shows that Plaintiff opened his door at 1:43 p.m. and allowed the locksmith and sprinkler repairman to enter the apartment to make the necessary repairs. The footage also shows that none of the officers ever entered Plaintiff's

5

apartment; they remained in the hallway at all times. Nor did anyone from the management company enter Plaintiff's apartment; in fact, before letting the workers in, Plaintiff confirmed that they were employed by a third-party contractor.

The footage shows that Plaintiff recorded the workers and police officers throughout the entire encounter and intermittently harangued the workers and the officers, insulting them and ostensibly trying to provoke them. Yet the workers completed the repairs without incident, and the officers left the scene by 2:09 p.m. At no time did any police officer, or anyone other than the locksmith and the sprinkler repairman, enter Plaintiff's apartment.

When it ruled on Plaintiff's emergency motion for injunctive relief, this Court held that the Officers' body worn camera footage remained central to this case and was thus appropriately considered at that juncture. *See* [48]. The holding applies with equal force today. *See Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024) ("when an exhibit, including a video exhibit, incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls; this is so even on a motion to dismiss, as a complaint that contradicts uncontroverted video is not plausible.") (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Esco*, the Seventh Circuit approved the practice of considering video evidence that discredits a plaintiff's account of the facts while viewing the video in the light most favorable to the plaintiff; this, the court held, constituted "an appropriately balanced practice for a district court that must accept the plaintiff's well−pleaded facts as true, while also not giving credence to facts

6

that are clearly, definitively, and uncontrovertibly contradicted by video footage." 107 F.4th at 679. Employing this appropriately balanced practice today, the Court finds that Plaintiff's claims must be dismissed.

### B. Claims Based Upon Defendants' Entry Into Plaintiff's Apartment (Counts II, III, and V)

Initially, Plaintiff's trespass and Fourth Amendment claims remain predicated upon his allegation that the Defendants entered his apartment unlawfully. The body worn camera footage shows that they did not enter his apartment at all. The Officers remained in the hallway during the entire incident and never crossed the threshold into his apartment. So too Defendant Coates. The only people who entered Plaintiff's apartment were the locksmith and the sprinkler repairman. And, in any event, the allegations, viewed through the lens of the body worn camera footage, show that there was nothing unlawful or unconstitutional about any entry into Plaintiff's apartment on December 2, 2024.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated". U.S.C.A. Const. Amend. 4. As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness. *Riley v. California*, 573 U.S. 373 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398 (2006)). The Fourth Amendment is meant to "constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. Cal.*, 384 U.S. 757, 768 (1966).

7

Reasonableness generally requires a judicial warrant. *See Vernonia School Dist. 47 J v. Acton*, 515 U.S. 646, 653 (1995).

In some situations, however, a warrantless search or seizure remains reasonable. *Illinois v. McArthur*, 531 U.S. 326, 330. For example, warrantless searches remain consistent with the Constitution when an individual possessing authority consents to a search. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Consent negates any claim to an unreasonable search. *United States v. Ahmad*, 21 F.4th 475, 478 (7th Cir. 2021); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Consent must be given freely and voluntarily, with the voluntariness of consent determined from the totality of the circumstances, including both the characteristics of the searched party and the details of the interrogation. *Schneckloth*, 412 U.S. at 227. Whether an individual's consent to a search is voluntary is a factual determination for the court to make. *See U.S. v. Richards*, 741 F.3d 843, 847 (7th Cir. 2014). Although a district court, on a motion to dismiss, must take the Plaintiff's well-pleaded facts as true, when an exhibit, "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Esco*, 107 F.4th at 678–79.

Here, Plaintiff admitted that he granted Defendants access to his apartment to make necessary repairs. [12] at ¶ 36. He alleges that he did so "under duress," *id.*, and the Court initially determined, when it screened Plaintiff's complaint, that this allegation sufficed to suggest that his claim could proceed. But the Officers' body worn camera footage completely undermines the allegation of duress and shows

8

conclusively that Plaintiff voluntarily consented to the workers' entry into his apartment. Because the Defendant Officers never entered Plaintiff's apartment, and because Plaintiff voluntarily consented to the entry of the workers (the only individuals who actually entered the apartment), Plaintiff cannot state a claim based upon any forced or unreasonable entry into his apartment. The Court thus dismisses his Fourth Amendment and trespass claims (Counts II, III, and V).[2]

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress (Count IV)

Plaintiff also alleges that Defendants' conduct constitutes the intentional infliction of emotional distress ("IIED"). To state a claim for IIED, a plaintiff must allege three things. First, a plaintiff must allege conduct by defendants that is truly extreme and outrageous. *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988). Second, a plaintiff must allege that the defendants either intended that their conduct inflict severe emotional distress or knew there was at least a high probability that their conduct would cause severe emotional distress. *Id.* Third, the defendants' conduct must in fact cause severe emotional distress. *Id.* Plaintiff's allegations fall short on all three counts.

---

[2] The claim against the Officers would also fail based upon qualified immunity. The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). They remain immune from suit even if they were wrong in deciding that the management company provided proper notice and had the right to access Plaintiff's apartment to repair the sprinkler head. *Id.* ("immunity covers mere mistakes in judgment, whether the mistake is one of fact or one of law").

Plaintiff alleges that Defendant Coates deactivated his key fob, referred to him as a squatter, and engaged in conduct designed to intimidate, harass, and humiliate him. [12] ¶¶ 99–101. He also alleges that Coates, in concert with the Officer Defendants, "facilitated an unlawful and aggressive attempt to enter" Plaintiff's apartment. *Id.* ¶ 102. Initially, even as alleged by Plaintiff, the purported conduct fails to rise to the level of extreme and outrageous. *See, e.g., Cavalieri-Conway v. L. Butterman & Assocs.*, 992 F. Supp. 995, 1010 (N.D. Ill. 1998), *aff'd sub nom. Cavalieri v. L. Butteman & Assocs.*, 172 F.3d 52 (7th Cir. 1999) (holding that plaintiff could not sustain an IIED claim based upon her building manager's insults and poor treatment); *Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 571 (7th Cir. 1989) ("an actor will not be held liable for the intentional infliction of emotional distress where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.").

More significantly, however, Plaintiff's allegations are also belied by the footage. The footage shows that none of the Defendants entered Plaintiff's apartment at all, let alone under circumstances that could inflict emotional distress. In fact, the footage shows that the officers behaved reasonably and professionally throughout their encounter with Plaintiff and treated Plaintiff at all times with respect and patience, despite his attempts to engage and provoke them. Quite simply, the footage

belies any claim of extreme or outrageous conduct on the part of any Defendant.[3] As a result, the Court dismisses Count IV.

### D. Violation of the Illinois Residential Tenant's Right to Organize Act (Count I)

Finally, Plaintiff alleges that Defendants Coates and Greystar violated the Illinois Residential Tenant's Right to Organize Act. [12] at ¶ 46. In connection with this claim, Plaintiff's complaint references 765 ILCS 750/1, *see* [12] ¶ 53, but that cite refers to the "Safe Homes Act." That Act, which states that its purposes are to "promote the State's interest in reducing domestic violence, dating violence, sexual assault, and stalking by enabling victims of domestic or sexual violence and their families to flee existing dangerous housing in order to leave violent or abusive situations," appears to have no relevance to this matter. To be sure, the Act provides no substantive rights in circumstances such as those described in Plaintiff's complaint.

The City of Chicago, of course, has a residential landlord and tenant ordinance, which includes a provision concerning a landlord's right of access, *see* Chicago, IL, Code § 5-12-050. But Plaintiff has not alleged facts to suggest any violation of this ordinance and the Officers' body worn camera footage confirms that he cannot state a claim for violation of the ordinance. The Court thus dismisses Count I for failure to state a claim.

---

[3] Plaintiff's IIED claim against the Officer Defendants also fails under the Illinois Tort Immunity Act, which shields public employees from liability for actions "committed in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202.

11

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motions to dismiss [24], [27], and dismisses all claims for failure to state a claim. Additionally, because the body worn camera footage demonstrates that any further amendment would be futile, the Court declines to grant Plaintiff further opportunity to amend, and dismisses this case with prejudice. *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015). Civil case terminated.

Dated: February 10, 2026            Entered:

                                               John Robert Blakey
                                               United States District Judge